IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA, )
                       )
          Plaintiff, )
                       )
         v. ) No. 26 CV 550
                       ) Judge Joan H. Lefkow
STANISLAV SANNIKOV, )
                       )
        Defendant. )

**GOVERNMENT'S RESPONSE TO STANISLAV SANNIKOV'S 28 U.S.C. § 2255 PETITION**

The UNITED STATES OF AMERICA, by its attorney, ANDREW S. BOUTROS, United States Attorney for the Northern District of Illinois, hereby responds to Stanislav Sannikov's petition pursuant to 28 U.S.C. § 2255, as follows. A hearing is necessary to resolve Sannikov's claim that his attorney provided ineffective assistance of counsel by failing to advise him of the immigration consequences of his guilty plea. The remaining allegations in Sannikov's petition should be denied, without a hearing, for the reasons set forth below.

**District Court Proceedings**

*Charges and Conviction*

On April 25, 2023, Sannikov was charged in a one-count information with a violation of 18 U.S.C. § 1343. R. 1.[1] The charge also included a forfeiture allegation. *Id.* On June 14, 2023, Sannikov waived indictment. R. 7, R. 8.

On March 13, 2024, Sannikov pled guilty, pursuant to a written plea declaration, to the charge against him. R. 19, R. 20. In the plea declaration, Sannikov, a real estate broker, admitted to an approximately four-year scheme to defraud real estate investors. R. 20. Sannikov purported to broker their purchase or lease of certain real properties and induced the investors to deposit money intended for the purchase or lease of those properties into bank accounts that he controlled. *Id.* at 3-4. Sannikov falsely and fraudulently represented to these investors that the properties were available for purchase or lease and that the bank accounts were escrow accounts, controlled by legitimate escrow companies, which would hold their money in escrow toward the purchase of those properties. *Id.* In fact, as Sannikov knew, the

---

[1] References to the record in Sannikov's criminal case, 23 CR 253, are to "R," followed by the applicable docket item number. References to the record in Sannikov's § 2255 case are to "CVR," followed by the applicable docket item number.

2

properties were not available for purchase or lease and the accounts holding the investors' money were not escrow accounts controlled by legitimate escrow companies, but bank accounts he controlled. *Id*. He thereafter used the money that investors deposited into those accounts not to purchase or lease real estate, but for his personal use and benefit and to continue the scheme, causing the investors to lose approximately $3,021,481 in losses. *Id*.

On March 13, 2024, the district court held a plea colloquy. R. 60. During the colloquy, Sannikov admitted under oath, among other things, that:

- between 2016 and 2020 that he was a real estate broker engaged in a scheme to defraud real estate investors by purporting to broker their purchase or lease of certain real properties and by inducing investors to deposit money intended for the purchase or lease of those properties into bank accounts that he controlled;

- he falsely and fraudulently represented to those investors that the properties were available for purchase or lease and that the bank accounts were escrow accounts controlled by legitimate escrow companies, which would hold their money in escrow toward the purchase of those properties;

- he knew that the properties were not available for purchase and lease, and the accounts holding the investors' money were not escrow accounts controlled by legitimate escrow companies but bank accounts he controlled;

- he used the money that investors deposited, not to purchase or lease real estate but for his own personal use and benefit and to continue the scheme, and

3

- he caused real estate investors to suffer $3,021,481 in losses because of his investment property scheme.

R. 60 at 3-4, 18-21.

### *The Presentence Investigation Report*

Prior to sentencing, a presentence investigation report was prepared, using the 2023 edition of the Guidelines Manual. R. 41, ¶ 40. The probation officer found that Sannikov's total offense level was 24, his criminal history category was II, and the advisory guideline imprisonment range was 57 months to 71 months' imprisonment. *Id*. at ¶¶ 41-52, 120. The probation officer found that Sannikov's base offense level was seven, pursuant to USSG §2B1.1(a)(1); the base offense level was increased by sixteen levels pursuant to USSG §2B1.1(b)(1)(I) as a result of a total loss amount of $3,021,48;[2] the base offense level was further increased by two levels pursuant to USSG § 2B1.1(b)(2)(A)(iii) as a result of substantial financial hardship to one victim; the base offense level was further increased by two levels pursuant to USSG § 2B1.1(b)(10)(C) as a result of the use of sophisticated means. *Id*. Sannikov received a three-point reduction for acceptance of responsibility pursuant to USSG §§3E1.1(a) and (b), for a total offense level of 24. *Id*. at ¶¶ 50-52.

---

[2] This is a typographical error: as noted above, during the plea colloquy, Sannikov admitted that the amount of loss was $3,021,481. R. 60 at 20.

4

Sannikov was a Category II offender with three criminal history points. *Id.* at ¶ 70. The substantial hardship enhancement was based on information provided by Vladimir Melamed, who postponed his retirement, sold a residence at a loss, and purchased a less expensive home to pay back loans taken out by the defendant in Melamed's name. *Id.* at ¶ 43.

Prior to sentencing, Sannikov filed a sentencing memorandum wherein he concurred in the advisory guidelines calculations set forth in the PSR; noted that he did not dispute the loss amount of $3,021,481; sought a below-the-range sentence of 36 months, and asked the Court to reduce the total restitution order to $2,866,481 to reflect $155,000 recovered by the victims as the result of two state civil lawsuits. R. 29. In a subsequent filing after the government amended its restitution figure to $2,248,467 (see R. 35), Sannikov argued that the restitution amount should be reduced to $1,818,217 as a result of payments made to six victims following litigation. R. 38.

### *The Sentencing*

Sannikov was sentenced on February 5, 2025. R. 39, R. 40, R. 42, R. 61. Sannikov did not object to the advisory guidelines calculations or the factual recitation in the PSR, with the exception of the inclusion of the term "rob" to describe the offense at issue. R. 61 at 4-7. The district court heard from victim Vladimir Melamid, who described the impact that Sannikov's conduct

5

had on his life and finances. R. 61 at 39-47. After hearing from the parties regarding the § 3553 factors, and hearing Sannikov's allocution, the district court sentenced him to a below-the-range term of 50 months' imprisonment, followed by a two-year term of supervised release. R. 61 at 52, 60. The district court deferred ordering restitution pending resolution of the parties' disputes regarding the appropriate amount. R. 61 at 53.

Following the sentencing, Sannikov argued that the restitution amount should be reduced to $1,927,217 as a result of additional payments made to the victims in litigation. R. 44. The district court denied the motion and entered a restitution order in the amount of $2,199,217. R. 46, R. 47. Sannikov did not appeal his sentence or the order of restitution.

### *Sannikov's § 2255 Petition*

On January 16, 2026, Sannikov filed his § 2255 petition, in which he argues that his attorney performed ineffectively in failing to inform him of the immigration consequences of his guilty plea; correct the use of inaccurate information used to impose the vulnerable victim enhancement pursuant to USSG § 3A1.1(b)(1), and argue that the amount of loss and the restitution figures were inaccurate. CVR 1. His contentions lack merit.

6

## ANALYSIS

In order to prevail on a claim of ineffective assistance of counsel, Sannikov must show (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The inquiry under the first component of this test is "highly deferential" to counsel. *Id*. at 689. Counsel is presumed to have made reasonable strategic judgments, and "there is a strong presumption that any decisions by counsel fall within a wide range of reasonable trial strategies." *Valenzuela v. United States*, 261 F.3d 694, 698-99 (7th Cir. 2001) (quoting *United States v. Lindsay*, 157 F.3d 532, 535 (7th Cir. 1998)). Strategic decisions are not second-guessed on review. *United States v. Ruzzano*, 247 F.3d 688, 696 (7th Cir. 2001).

The second component of the *Strickland* test requires the petitioner to establish that he was prejudiced by his counsel's deficient performance. *Strickland*, 466 U.S. at 689. This requires Sannikov to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome."

7

*Id.* Sannikov must satisfy both prongs of the test in order to meet his burden, and a finding against Sannikov on either prong ends the inquiry. *Id.* at 697.

**1. A hearing is necessary to resolve Sannikov's claim of ineffectiveness regarding the immigration consequences of his guilty plea.**

Sannikov argues that his attorney performed ineffectively in failing to advise him of the immigration consequences of his guilty plea. CVR 1 at 1-4. A question of fact exists on this issue that cannot be resolved solely by examination of the pleadings in this case. A hearing is therefore necessary on this issue.

**2. Sannikov's claim that his counsel performed ineffectively at sentencing lacks merit.**

Sannikov contends that his counsel performed ineffectively at sentencing for failing to correct the use of inaccurate information regarding victim Vladimir Melamid, which he claims was used to impose the vulnerable victim enhancement pursuant to USSG § 3A1.1(b)(1), and argue that the amount of loss and the restitution figures were inaccurate. CVR 1. His argument lacks merit, and this aspect of his petition should be denied.

In order to prevail on a claim of ineffective assistance of counsel at sentencing, Sannikov must show (1) that his attorney's performance fell below an objective standard of reasonableness and (2) that there is a reasonable

8

probability that, but for his counsel's errors, the result of the sentencing proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The inquiry under the first component of this test is "highly deferential" to counsel. *Id*. at 689.

Ordinarily, in the post-*Booker* era in which the Sentencing Guidelines are not mandatory, relief is not available under § 2255 for errors in Guidelines calculations unless the error is of constitutional dimension. *Hawkins v. United States,* 706 F.3d 820, 826, 828 (7th Cir. 2013) (*Hawkins I*), citing *Welch v. United States*, 604 F.3d 408, 412 and n. 4 (7th Cir. 2010); *Hawkins v. United States,* 724 F.3d 915, 916 (7th Cir. 2013) (*Hawkins II*).

However, in the sentencing context, an attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance entitling the defendant to relief. *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011)); *see also Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) ("An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance."). That is not the case here.

9

       a.      *Sannikov's claims regarding Vladimir Melamid are unsupported and lack merit.*

Sannikov contends that his counsel performed ineffectively in failing to challenge a two-level enhancement purportedly applied at sentencing as a result of losses experienced by Vladimir Melamid due to Sannikov's conduct. CVR 1 at 4-5. He argues that his counsel failed to inform the Court that Melamed was purportedly worth in excess of $10 million; was a skilled real estate investor; chose to remain on a property owned by Sannikov; had never maintained a steady job, and was not forced to sell his property or delay his retirement. *Id.* at 4-6. His allegations lack merit.

Sannikov never challenged, and does not discuss in his motion, his conduct regarding Melamed as set forth in the PSR. See R. 41 at ¶¶ 11, 12; R. 29; R. 61 at 4-6; CVR 1. As noted in the PSR, Sannikov contacted Melamed and induced him to provide $110,000 in earnest money to Chicago Title Services LLC in order for Melamed to purchase a property on Halsted Street that was not for sale; told Melamed that he had negotiated an assignment agreement wherein Melamed would turn a profit, and prepared a false and fraudulent purchase agreement signed by the purported seller. R. 41 at ¶ 11-12. He induced Melamed to wire money into an account controlled by Sannikov; caused Melamed to deposit $54,250 into Chicago Title Services bank

account, which Sannikov controlled; took out at least five loans in excess of $2.5 million in the name of Melamed's company without Melamed's knowledge or consent; used the proceeds of those loans to execute and conceal the scheme, including replacing money deposited by Melamed for real estate transactions that Sannikov already had used, and created numerous false documents in order to obtain the loans in the name of Melamed's company. *Id.* Melamed was clearly a victim of the fraud, based on this uncontested conduct.

Sannikov's claims regarding his attorney's performance relative to Melamed are baseless. Sannikov's advisory guideline range was not adjusted pursuant to USSG § 3A1.1(b)(1) for vulnerable victim status and his contentions to that effect are incorrect. R. 41 at ¶¶ 41-52. Sannikov's base offense level was increased by two levels pursuant to USSG § 2B1.1(b)(2)(A)(ii) as a result of substantial financial hardship to one or more victims. R. 41 ¶ 44. To the extent that Sannikov's claims can be construed as an attack on his counsel's performance regarding the substantial financial hardship enhancement, his contentions lack merit.

Section 2B1.1(b)(2)(A)(iii) applies if the offense resulted in "substantial financial hardship to one or more victims." *Id.* When determining whether an offense resulted in substantial financial hardship, a court "shall consider, among other factors," whether as the result of an offense a victim became

11

insolvent; filed for bankruptcy; suffered a substantial loss of a retirement, education, or other savings or investment fund; made substantial changes to employment or living arrangements; or suffered substantial harm to the ability to obtain credit. § 2B1.1 cmt. n.4; *United States v. Minhas*, 850 F.3d 873, 877 (7th Cir. 2017). The probation officer noted, in applying the enhancement, that Melamed "postponed his retirement, sold a residence at a loss, and purchased a less expensive home to pay back loans taken out by the defendant in the victim's name." R. 41 at ¶ 43. These factors clearly fit within those listed in the application note and Sannikov never contested them in his sentencing memorandum or at sentencing.

When a § 2255 petitioner faults his attorney for failing to present evidence at sentencing, he bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result. *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005); *Berkey v. United States*, 318 F.3d 768, 774 (7th Cir. 2003)). Sannikov's "evidence" on this issue consists of unsupported allegations that Melamid was purportedly worth in excess of $10 million; was a skilled real estate investor; chose to remain on a property owned by Sannikov; had never maintained a steady job, and was not forced to sell his property or delay his retirement. *Id.* at 4-6. None of these contentions is

12

supported by any documentation or evidence whatsoever, and only his two last unsupported allegations address any of the factors set forth in the application note. Though he faults his counsel for not using subpoenas to obtain additional information regarding the case, it is his burden to provide the court with a comprehensive showing as to what an investigation would have produced. *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990). He has failed to do so. Further, his claim that Melamed was not "financially devastated" is irrelevant, since the test for applying the enhancement is "substantial financial hardship" and not "financial devastation." See 2B1.1(b)(2)(B).

Moreover, by failing to develop his argument with citations to any evidence, Sannikov has waived it.[3] *Argyropoulos v. City of Alton*, 539 F.3d 724, 739 (7th Cir. 2008) (undeveloped and legally unsupported arguments are waived even when those arguments raise constitutional issues). *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are

---

[3] If Sannikov attempts to remedy this situation in his reply brief, it should be stricken. *Porco v. Trustees of Ind. Univ.*, 453 F.3d 390, 395 (7th Cir. 2006) (arguments made for the first time in reply brief are waived).

13

waived."); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991); *United States v. Brown,* 899 F.2d 677, 679 n.1 (7th Cir. 1990); *United States v. Bitterman*, 320 F.3d 723, 727 (7th Cir. 2003) ("We will not entertain [defendant's] half-hearted and conclusory argument, as it lacks legal or factual support of any kind . . .[w]e have held time and again that perfunctory and undeveloped arguments (even constitutional ones) are waived . . .").

   b.     *Sannikov admitted to the loss amount.*

Sannikov faults his attorney for failing to contest the loss amount and corresponding sentencing guidelines.   CVR 1 at 5. Because he admitted to the loss amount under oath, this aspect of his petition should be denied.

As noted above, the amount of loss in this matter, $3,021,481, was based on Sannikov's admissions in the plea declaration and during the plea colloquy. See R. 20 at p. 3; R. 60 at 20; R. 41 ¶ 42.   His under-oath admissions during the colloquy are binding on him.   "[T]he representations of the defendant ... at [a plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); see *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000).

14

Moreover, Sannikov has provided this Court with absolutely no reason, and no evidence, to believe that the admitted loss figure was incorrect. This aspect of his petition should therefore be denied.

      c.      *Sannikov may not challenge the restitution amount via § 2255.*

This leaves Sannikov's contention that his counsel performed ineffectively regarding the restitution figure, that his counsel did not understand the complex transactions at issue and the restitution amount is therefore inaccurate. CVR 1 at 5-6. As noted above, Sannikov's counsel extensively litigated the restitution amount in this case, both before and after his sentencing. R. 29, R. 38, R. 44. Sannikov has provided no evidence beyond unsupported and conclusory allegations to support his claim that the figure is incorrect.

Moreover, monetary issues like restitution and forfeiture are not cognizable in a § 2255 motion because they do not relate to an issue of custody. *Barnickel v. United States*, 113 F.3d 704 (7th Cir. 1997) (restitution part of sentence not cognizable under § 2255; relief requested does not qualify as "a right to be released," as required by § 2255, which is "not available to challenge an order of restitution imposed as part of a criminal sentence" because "the relief requested in such a case [does] not qualify as a 'right to be released' ") (citations omitted).

Also, as noted above, Sannikov failed to appeal the restitution order in this case and thus may not use § 2255 to address it at this late date. *United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015) ("A 28 U.S.C. § 2255 motion, for instance, cannot be used as a vehicle for challenging the restitution component of a sentence . . . we have been clear that such motions are no substitute for a direct appeal," citing *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997)); *United States v. Vibgyor Optical Sys., Inc.*, 798 F. App'x 1, 3 (7th Cir. 2020)(" . . . direct appeal is the only opportunity to raise a *Strickland* claim that addresses forfeiture or restitution because a defendant cannot obtain collateral relief for deprivations of property[.]", citing *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) (holding that challenge to restitution component of sentence is not cognizable on collateral review because order to pay restitution does not constitute "custody").

## CONCLUSION

A hearing is necessary regarding Sannikov's claim that his counsel failed to inform him of the immigration consequences of entering a plea in this matter. The remainder of Sannikov's allegations, as argued above, lack merit. Therefore, the remainder of his petition should be denied in its entirety, without a hearing, consistent with the case law cited above.

Respectfully Submitted,

ANDREW S. BOUTROS
United States Attorney

By: */s/ Madeleine S. Murphy*
MADELEINE S. MURPHY
Assistant U.S. Attorney
219 S. Dearborn, 5th Floor
Chicago, IL 60604
(312) 886-2070

17

CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the aforenamed document was served pursuant to the district court's ECF system as to ECF filers, if any, and were sent by first class mail on June 11, 2026 to the following individual:

Stanislav Sannikov
No. 63953-510
Special Mail Open only in the presence of the inmate
FCI Allenwood Low
FEDERAL CORRECTIONAL INSTITUTION
P.O. BOX 1000
White Deer, PA 17887

By:    /s/ *Madeleine S. Murphy*
         MADELEINE S. MURPHY
         Assistant United States Attorney
         219 S. Dearborn Street
         Chicago, Illinois     60604
         312) 886-2070

18